UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEATTRA TANSIL,

        No. 15-11405

    Plaintiff,        District Judge Gershwin A. Drain

v.        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Deattra Tansil ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #24] and Plaintiff's Motion for Summary Judgment DENIED [Docket #21].

**I.   PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI on March 2, 2012, alleging disability as of January

1, 2012 (Tr. 213-213-216, 217-222). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 11, 2013 in Livonia, Michigan before Administrative Law Judge ("ALJ") David A. Mason (Tr. 44). Plaintiff, represented by attorney Barry Franklin Keller, testified, (Tr. 51-95), as did vocational expert ("VE") John Norman Stokes (Tr. 95-105). On July 26, 2013, ALJ Mason found that while Plaintiff did not have any past relevant work, she could perform a range of other work (Tr. 30-39).

The Appeals Council reviewed the case on February 27, 2015 (Tr. 6-7). The Council did not change the ultimate finding that Plaintiff was not disabled but found that she had past relevant work as a housekeeper/cleaner (Tr. 6-7). The Council found that the Residual Functional Capacity determined by ALJ Mason would allow Plaintiff to perform the past relevant work (Tr. 7). Plaintiff filed suit in this Court on April 17, 2015.

## II.  BACKGROUND FACTS

Plaintiff, born December 2, 1964, was 50 at the time of the Appeals Council determination (Tr. 8, 213). She completed 10th grade and worked previously as a janitor (Tr. 243). She alleges disability due to bipolar disorder, depression, glaucoma, disc disease of the lumbar spine, left eye blindness, and a shoulder injury (Tr. 242).

### A.  Plaintiff's Testimony

At the April 11, 2013 hearing, Plaintiff offered the following testimony:

She had not worked since slipping and falling at work in May, 2011 (Tr. 52). She had made no effort to find other work because of depression, headaches, and back pain (Tr. 52).

In the past, she had been convicted of destruction of police property (Tr. 52). Her 16-year-old son was cared for by his father (Tr. 53). She was currently living with her mother in an apartment in Oak Park (Tr. 56).

Plaintiff did not have a driver's license (Tr. 56). A friend drove her to the hearing (Tr. 56). She attended church about twice a year (Tr. 56-57). She did not socialize due to depression (Tr. 57). She smoked four or five cigarettes a day but did not drink (Tr. 57). She stopped drinking in 2006 (Tr. 58). She did not use street drugs and had not abused prescription drugs (Tr. 58).

Up until May, 2011, Plaintiff worked as a janitor at Detroit Diesel (Tr. 61). The job required the use vacuum cleaners and industrial "push brooms" (Tr. 61). She also pushed recycle bins (on wheels) weighing between 15 and 100 pounds (Tr. 61). The vacuums weighed between 25 and 30 pounds (Tr. 62). The May, 2011 workplace accident caused injuries to the neck, back, and left eye (Tr. 62-63). She did not have good vision in the left eye (Tr. 63). The eye problem made her feel "sad and depressed" (Tr. 63). She did not experience problems dressing herself, but had problems performing household tasks due to the loss of vision and clumsiness (Tr. 65-66).

Following the May, 2011 accident, she received worker's compensation for almost six months (Tr. 68). Plaintiff required medication for eye, back, and headaches (Tr. 68). Sitting for a long time and trying to bend over caused back pain (Tr. 69). She also experienced pain lifting her right arm (Tr. 69).

In response to questioning by her attorney, Plaintiff reported that she had a substance abuse problem until 2006 (Tr. 69). She had previously drawn Social Security benefits but had resumed work from 2006 to 2011 to better herself (Tr. 69). She owned a house in Southfield that was now boarded up due to a fire (Tr. 70). She acknowledged that before 2006, she was taking non-prescribed medication (Tr. 70). She reported that she had been "clean" since attending a 90-day rehab program (Tr. 71). Her medication use was limited to drugs prescribed by her doctor but she admitted that she "doubled up" on pain medication dosages because of back pain (Tr. 71). She opined that she was unable to work due to back pain, depression, and frequent crying jags (Tr. 72). She had received psychiatric treatment while receiving Workers' Compensation benefits but did not receive any treatment at present due to lack of health insurance (Tr. 73). She opined that she might be able to work if she received medicine and treatment, adding that she believed her left eye blindness prevented her from working (Tr. 74).

Plaintiff relied on her mother to perform most household and cooking chores (Tr. 78). Plaintiff could prepare microwave meals, grocery shop with her mother, and perform laundry chores (Tr. 78). On a typical day, she arose at noon, made coffee, watched television, and reclined (Tr. 81). She had six children and three grandchildren (Tr. 83). She was unable to walk for more than half a block, stand for more than five minutes, or sit for more than 10 minutes (Tr. 85). Her most comfortable position was reclining (Tr. 86). She was unable to lift more than a gallon of milk (Tr. 86). She was unable to bend and experienced difficulty

reaching overhead (Tr. 86). She experienced asthma but had not received medication or treatment since losing her insurance (Tr. 87). She experienced difficulty with memory, concentration, and getting along with her former coworkers (Tr. 87). She had previously experienced suicidal ideation as well as thoughts of taking a gun to her former workplace (Tr. 88).

Plaintiff reported daily headaches with level "10" pain on a scale of 1 to 10 but later stated that they occurred thrice-weekly and were level "6" (Tr. 89-91). She took Aleve for headaches (Tr. 90). She rated her lumbar spine pain as a "7.5" and cervical spine pain as a "6.5" (Tr. 91-92). The Aleve provided little relief from back pain (Tr. 91). She reported 20/20 vision in the right eye (Tr. 92). She experienced eye strain from overusing her good eye, rating her eye pain as a "6.5" (Tr. 93). The eye pain was aggravated by bright lights and colors (Tr. 93).

### B. Medical Records

#### 1. Treating Sources

June, 2009 records by the Kresge Eye Institute note a "traumatic" cataract (Tr. 332). The notes state that Plaintiff sustained a a trauma to the left eye four years earlier (Tr. 332). She reported that she was unable to see from her left eye (Tr. 334). September, 2009 opthalomogical records state that Plaintiff recently "damaged her neck and back" during an accident at work (Tr. 339). On October 12, 2009, Plaintiff was restricted to 10-pound lifting "until further notice" due to September 25, 2009 retinal surgery (Tr. 451). April, 2010

records note blurred vision in the left eye (Tr. 378). In July, 2010, opthalomologist Bret A Hughs, M.D. composed an opinion letter stating that Plaintiff had "significant loss of vision equal to legal blindness in her left eye" (Tr. 452).

March, 2011 opthalomogical records state that Plaintiff was an assembly worker (Tr. 387). May 4, 2011 records state that she experienced a corneal abrasion when her glasses broke during a workplace fall the day before (Tr. 390). The eye condition was deemed "mild" and "stable" (Tr. 390). The following week, she reported continued eye irritation but denied other difficulties (Tr. 394). Notes from the following month state that the corneal abrasion was resolved (Tr. 405). December, 2011 notes state that Plaintiff was "using drugs" (Tr. 406). The same month, she requested a renewal of a medical marijuana license (Tr. 407).

May, 2011 progress notes by Munzer Samad, M.D. note Plaintiff's report of neck and head pain after the workplace accident[1] (Tr. 305). A May, 2011 CT of the brain showed no acute abnormalities (Tr. 324). A CT of the cervical spine was negative for fractures but showed "mild to moderate" neural foramen encroachment at C2-C3 (Tr. 323). In July, 2011, Plaintiff reported neck and bilateral hand tingling despite physical therapy (Tr. 303). A July, 2011 MRI of the left shoulder was negative for a rotator cuff tear but showed a bone contusion possibly relating to the May, 2011 accident (Tr. 322). August, 2011 records note

---

[1] In the administrative opinion, the ALJ refers to Dr. Samad as "Dr. Munzer" (Tr. 35-36).

Plaintiff's report of increasing depression and a willingness to undergo psychiatric inpatient treatment (Tr. 302). A September, 2011 bone scan showed only degenerative changes (Tr. 320). Dr. Samad's October, 2011 notes state that Plaintiff reported fatigue but no suicidal ideation (Tr. 300). She reported that she was unable to bend due to back pain (Tr. 300). The following month, Plaintiff reported complete vision loss in the left eye, but noted that she had not following up on a referral for psychiatric care (Tr. 300). She reported that she was living with her boyfriend but that her mother was taking care of her (Tr. 300). Dr. Samad continued a prescription for Wellbutrin (Tr. 300).

### 2. Non-Treating Sources

In May 9, 2012, Sung Ran Cho, M.D. performed a mental status examination on behalf of the SSA, noting Plaintiff's reports of multiple inpatient psychiatric hospitalizations in the 1990s and 2005 (Tr. 417). Plaintiff reported that she was legally blind in the left eye (Tr. 417). She indicated that she worked as a janitor for six years until the May, 2011 injury (Tr. 418). She admitted to cocaine abuse until 2006 (Tr. 418). Plaintiff reported that prior to the workplace accident, she had panic attacks at work (Tr. 419). Dr. Cho assigned Plaintiff a GAF of 58 with a "poor" prognosis[2] (Tr. 420). He found that Plaintiff would be unable to handle her benefit funds due to her history of illicit drug use (Tr. 420). The same month, Rose Moten, Ph.D. performed a non-examining review of Dr. Samad's treating

---

[2] A GAF score of 51-60 indicates "moderate symptoms OR moderate difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders–Text Revision*, 34 (*"DSM–IV–TR"*) (4th ed.2000).

records and Dr. Cho's consultative examination, finding that Plaintiff experienced mild restriction in activities of daily living and moderate restriction in social functioning and concentration, persistence, or pace (Tr. 112). Dr. Moten concluded that Plaintiff could perform "simple, repetitive work activity" (Tr. 113).

In May, 2013, Nick Boneff, Ph.D. performed a second mental health evaluation, noting Plaintiff's report of depression and a 2010 psychiatric inpatient hospitalization (Tr. 422). She reported that she did not receive treatment or medication due to lack of health insurance (Tr. 422). She reported depression resulting from the May, 2011 accident (Tr. 423). Dr. Boneff found that Plaintiff "put forth questionable effort" on intelligence testing, concluding that she "exaggerate[d] her cognitive difficulties" (Tr. 423). He assigned Plaintiff a GAF of 51 with a fair prognosis (Tr. 425). He found that Plaintiff experienced "marked" limitations in dealing with others due to her "lack of valid effort" during his evaluation attempts (Tr. 428).

The same month, Florence E. Thomas, M.D. performed a consultative physical examination, noting Plaintiff's report that she took Aleve and "other acquaintances' narcotic medications" to quell lower back pain[3] (Tr. 432). Plaintiff reported bipolar shoulder pain but denied treatment (Tr. 432). Dr. Thomas noted that Plaintiff did not appear to be in distress and did not require a cane (Tr. 433). She noted 5/5 strength in all extremities (Tr. 434). She

---

[3]Although the ALJ refers to the author of the report as "Dr. Kang," in fact the report is signed by Dr. Thomas (Tr. 434).

concluded that Plaintiff would experience "some difficulty" with bending, stooping, squatting, and heavy lifting (Tr. 434). She found that Plaintiff needed a sit/stand option (Tr. 434). Imaging studies of the lumbar spine showed only minimal degenerative changes (Tr. 435).

Dr. Thomas found that Plaintiff could lift up to 50 pounds on an occasional basis, sit for up to eight hours in an eight-hour workday and stand or walk for six (Tr. 441). She restricted Plaintiff to occasional reaching and pushing/pulling and frequent use of foot controls (Tr. 442). Dr. Thomas further restricted Plaintiff to occasional postural activities, exposure to height, moving mechanical parts, and operating a motor vehicle; and precluded all work involving humidity, pulmonary irritants, temperature extremes, and vibration (Tr. 444).

### C.  Vocational Testimony

VE Stokes classified Plaintiff's former work as a housekeeper/cleaner as unskilled and light[4] (Tr. 281). The ALJ described a hypothetical individual of Plaintiff's age, education, and work experience:

---

4

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

> [T]his individual would be limited to light work . . . lifting 20 pounds occasionally, 10 pounds frequently. This individual will be given a sit stand option as follows; this person can sit for up to one hour at a time, for a total of six out of eight hours. However, after about 30 minutes of sitting, this individual has the option of walking around for about two minutes, however they could remain on task on some aspect of the job function. This individual can stand and walk for up to two hours at a time for a total of six of eight hours. This individual has no vision in the left eye, so accordingly this person has impaired peripheral vision - - no peripheral vision on the left, and this person's depth perception is limited. So the person should not perform jobs that require great near visual or far visual acuity. The vision in the right is at about 20/20. This individual, accordingly, can occasionally climb ramps and stairs, no ladders, ropes or scaffolds. Occasionally balance, stoop, kneel, crouch and crawl. According to the testimony there is limitation in the use of the upper right extremity, so we will have no overhead lifting of the upper right extremity, and we would limit grasping, and fingering to - - on the right . . . to frequent. However, pushing and pulling on the right extremity would be limited to occasional. This individual should . . . avoid concentrated exposure to excessive vibration [and] airborne irritants such as fumes, odors, gas, dust and poorly ventilated areas. This individual should even avoid moderate exposure to the operational control[s] of moving machinery and/or unprotected heights. This individual would be limited given the depression, the mental impairments, limited to simple, routine, repetitive tasks, and a work environment that's free of fast-paced production requirements involving only simple work related decision, with few if any workplace changes. Brief and superficial contact with coworkers, supervisors, and the general public. If the individual had those limitations, would the individual be able to perform any of the claimant's past work? (Tr. 95-97).

The VE responded that the above limitations would preclude Plaintiff's past relevant work and all other work (Tr. 98). The VE testified that his testimony would remain unchanged if the limitation of no "fine, near visual acuity" were added to the hypothetical modifiers (Tr. 99). The ALJ posed a second set of hypothetical modifiers:

> [L]imited to light work, the person can stand for six of eight hours, could stand or walk for six of eight hours, could sit for six of eight hours, were limited in the left eye to near . . . visual acuity and were limited to simple routine

-10-

> repetitive tasks in the work environment that's real fast paced production requirements, involving only simple routine . . . work-related decisions with few if any workplace changes, and the individual were limited to occasional contact with coworkers, supervisors, and the general public; would there be jobs or occupations available? (Tr. 99).

The VE testified that the second set of restrictions would allow for the work of a housekeeping cleaner, laundry worker, and ironer with 3,700 jobs in the Southeastern Michigan economy (Tr. 100). The VE testified that if the second hypothetical limitations were amended to include limitations of "occasional stooping, crouching, crawling, balancing, kneeling, occasional ramps and stairs, no ladders, ropes, or scaffolds . . . . [N]o exposure to the operational control of moving machinery, unprotected heights or hazards, and also would be limited to the airborne irritants, fumes, odors, dust, gases, and poorly ventilated areas," the job numbers would remain the same (Tr. 100). However, the VE testified that if the same individual were off task for 20 percent of the workday due to "crying spells, memory lapses, mood swings, headaches, back pain, right shoulder pain [or] anger issues," all work would be precluded (Tr. 100-101). The VE also found that the need to miss up to two days of work each month would be work preclusive (Tr. 101).

The VE stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), adding that the testimony regarding absenteeism was not addressed by the DOT and was based instead on his professional experience (Tr. 101). In response to questioning by Plaintiff's attorney, the VE testified that a lack a depth perception due to the loss of sight in one eye would not preclude work as a housekeeper (Tr.

-11-

102-103).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "bipolar II disorder, depressed type; alcohol and cocaine abuse/dependence, in remission; schizoaffective disorder, combined type; glaucoma; degenerative disc disease in the lower back; asthma; left eye visual impairment; and a shoulder condition with associated pain" but that none of the conditions met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 32-33). The ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 33-34). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [S]he requires a sit/stand option such that she can sit up to 6 out of [8] hours; she can stand up to 6 out of [?] hours; she can walk up to 6 out of 8 hours; however, after 30 minutes of sitting she would have the option to walk around for about 2 minutes but could remain on task for some aspect of her job during this time; stand and walk for up to 2 hours at a time for up to [?] hours at a time; no jobs that require fine near visual acuity of the left eye; occasionally climb ramps or stairs; no ladders, ropes, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; no overhead lifting of the upper right extremity; grasping and fingering on the dominant right hand to no more than frequent; pushing and pulling on the right is limited to occasional; she should avoid concentrated exposure to excessive noise vibration, and irritants such as dust, gas, fumes, and poorly ventilated areas; she should avoid even moderate exposure to operational control ovmoving machinery and unprotected heights; simple, routine, repetitive tasks in a work environment free from fast paced production requirements involving simple, work related decisions with few if any workplace changes; and brief and superficial contact with coworkers,

supervisors, and the general public (Tr. 34).

Citing the VE's testimony, the ALJ determined that while Plaintiff had no past relevant work, she could work as a maid/housekeeper, laundry worker, or ironer (Tr. 38).

The ALJ discounted Plaintiff's alleged degree of limitation. He noted that even while Plaintiff had health insurance, she failed to follow through with recommendations for back therapy and psychiatric care (Tr. 37). He observed that imaging studies of the spine showed only mild conditions (Tr. 37). The ALJ noted that while Plaintiff testified that her lack of health insurance currently prevented her from receiving treatment, the lack of insurance or funds were "not bars to care at the emergency room or low cost/free clinics" (Tr. 37). He cited Dr. Boneff's consultative finding that Plaintiff exaggerated her mental limitations (Tr. 36).

### E. The Appeals Council Decision

On February 27, 2015, the Appeals Council reviewed the ALJ's decision (Tr. 4-8). Administrative Appeals Judges Constance Mallon-Link and A. Van Soest adopted ALJ Mason's finding that Plaintiff had not performed substantial gainful activity since the alleged onset date; his finding of severe impairments; and the RFC (Tr. 5 *citing* Tr. 32-34).

However, the Appeals Council declined to adopt ALJ Mason's finding that Plaintiff did not have "past relevant work," noting that the record showed that Plaintiff worked as a cleaner from 2006 through 2011 (Tr. 5). The Council noted that Plaintiff's earnings in 2008 and 2009 reflected substantial gainful activity sufficient to establish that the cleaning position

constituted past relevant work (Tr. 5-6). The Council cited the VE's testimony that the limitations ultimately found in the RFC would allow Plaintiff to work as a cleaner (Tr. 6 *citing* Tr. 100); *DOT* Code no. 323.687-014.

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS[5]

In her sole contention for remand, Plaintiff appears to argue that the ALJ erred by adopting the May, 2012 psychological findings of Dr. Moten, a non-examining source, over

---

[5] Although the Appeals Council findings represent the final decision at the administrative level, Plaintiff's argument pertains to sections of the ALJ's decision adopted by the Appeals Council.  In addressing Plaintiff's argument I will refer directly to the ALJ's decision.

the consultative findings by Drs. Cho and Boneff. *Plaintiff's Brief,* 5-6, *Docket #21.* Plaintiff argues, in effect, that the May 15, 2012 finding that she was capable of "simple, repetitive work activity" (Tr. 113) did not have benefit of either Dr. Cho's May 9, 2012 consultative findings or Dr. Boneff's May, 2013 findings.[6] *Id.*

Plaintiff is correct that generally, "updated" medical records are to be accorded more weight than older ones. *See Hamblin v. Apfel*, 7 Fed.Appx. 449, 451, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming an ALJ's rejection of an "outdated" opinion on the basis that another physician had performed a more recent appraisal with contradicting findings). Plaintiff relies on *Brooks v. Comm'r of Soc. Sec.,* 531 F. App'x 636, 642 (6th Cir. August 6, 2013) in support of her contention that the ALJ erred by adopting a non-consulting source's earlier opinion over the more recent examining findings.

The ALJ reliance on Dr. Moten's May, 2012 non-examining evaluation does not provide grounds for remand. First, while Plaintiff asserts that Dr. Moten did not have benefit of Dr. Cho's consultative findings from the same month, in fact, on May 15, Dr. Moten cites Dr. Cho's May 9, findings, noting Dr. Cho's diagnosis of bipolar disorder, and the GAF of 58 (Tr. 111, 420). Dr. Moten thus considered the first of two consultative psychiatric evaluations in concluding that Plaintiff could perform "simple, repetitive work activity" (Tr. 113). Dr. Moten also had benefit of Dr. Samad's treating records showing that Plaintiff

---

[6]Plaintiff does not challenge the findings regarding her physical limitations. My own review of the record shows that the ALJ's findings as to the physical conditions are supported by substantial evidence.

experienced symptoms of depression (Tr. 111). Plaintiff's argument that non-examining findings are outdated is further undermined by the fact that all of the treating records predate Dr. Moten's review.

Second, while Dr. Moten did not review Dr. Boneff's May, 2013 consultative findings, it is unlikely that those findings would have led her to find greater mental restriction. Dr. Boneff's finding of Plaintiff's "lack of valid effort" during intelligence testing undermines the allegations of mentally-related disability (Tr. 423, 425, 428). Further, Dr. Boneff declined to make any findings regarding Plaintiff's concentrational restrictions because the "insufficient" efforts during intelligence testing "cast[ed] doubt on the accuracy of the test results" (Tr. 427). The May, 2013 consultative examination (1) provided no new information regarding the concentrational limitations and, (2) suggested that Plaintiff exaggerated her symtomology.

Finally, the ALJ's adoption of Dr. Moten's findings over Dr. Boneff's is also well articulated. "When an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,' we generally require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks,* at 642 (*citing Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir.2009))(internal citations and punctuation omitted). The ALJ did exactly that here. He both discussed and reconciled the consultative findings with the

adoption of Dr. Moten's conclusions by noting that the finding that Plaintiff could perform "simple, repetitive work activity," was consistent with the GAF scores assigned by both Dr. Cho and Dr. Boneff showing moderate rather than serious work-related limitations (Tr. 37). The ALJ also discussed Dr. Boneff's findings at length, reasonably noting that Dr. Boneff's findings regarding the social limitations were based on "questionable evidence" (Tr. 37). Because the ALJ provided an adequate discussion of consultative evidence both predating postdating Dr Moten's assessment, he was entitled to adopt her findings over the more recent evidence.

In closing, my recommendation to uphold the Commissioner's decision on this application is not intended to trivialize the Plaintiff's personal problems or medical conditions. Nonetheless, the ALJ's determination that she is not disabled from all gainful employment is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #24] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #21] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 11, 2016

CERTIFICATE OF SERVICE

I hereby certify on August 11, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants August 11, 2016.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen

Dated: August 11, 2016