UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEATTRA TANSIL,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
______________________________/

Case No. 15-cv-11405

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION [26], ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION [25], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [24], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [21], AND AFFIRMING THE COMMISSIONER'S DECISION**

## I. INTRODUCTION

On April 17, 2015, Deattra Tansil ("Tansil" or "Plaintiff") filed the present action seeking review of the Commissioner's decision denying her claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Dkt. No. 1. The case was referred to United States Magistrate Judge R. Steven Whalen under 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Dkt. No. 3.

On March 14, 2016, Tansil filed a motion for summary judgment to reverse the decision of the Commissioner and remand the case with an order for the

administrative law judge (ALJ) to calculate and award benefits. Dkt. No. 21. Defendant filed a motion for summary judgment requesting affirmance of the decision of the Commissioner on May 17, 2016. Dkt. No. 24. Magistrate Judge Whalen filed a report on August 11, 2016, recommending that the Court grant defendant's motion for summary judgment, deny the plaintiff's motion for summary judgment, and affirm the decision of the Commissioner. Dkt. No. 25. The plaintiff filed timely objections to the recommendation. Dkt. No. 26. The Commissioner filed a reply to the objections on September 8, 2016. Dkt. No. 28.

## II. BACKGROUND

### A. Procedural Posture

Tansil was 48 years of age on the date of the ALJ's decision. Dkt. No. 15-2, pp. 78–79 (Pg. ID No. 121–22). She completed tenth grade and was previously employed as a janitor. *Id*. at 60, 62 (Pg. ID No. 103, 105). Tansil applied for disability insurance benefits and supplemental security income on March 2, 2012. Dkt. No. 15-5, pp. 2, 6 (Pg. ID No. 260, 264). Tansil argued that she is disabled because she suffers from bipolar disorder, depression, glaucoma, disc disease, left eye blindness, and a right shoulder injury. Dkt. No. 15-4, p. 17 (Pg. ID No. 190). Tansil's application was denied on May 17, 2012, based on a finding that the evidence did not show she was disabled and that her conditions were not severe enough to keep her from working. *See id*.; Dkt. No. 15-4, p. 28 (Pg. ID No. 201).

The following month, Tansil requested a hearing before an ALJ. Dkt. No. 15-4, p. 37 (Pg. ID No. 210).

On April 11, 2013, Tansil appeared with her counsel before ALJ David A. Mason, Jr. for an administrative hearing with testimony offered by Tansil and a vocational expert (VE), John Norman Stokes. Dkt. No. 15-2, p. 45 (Pg. ID No. 88). In a written decision dated July 26, 2013, the ALJ determined that Tansil was not disabled within the meaning of the Social Security Act. Dkt. No. 15-2, p. 31 (Pg. ID No. 74). On February 27, 2015, the Appeals Council issued a decision that found Tansil was capable of performing past relevant work, and thus was not entitled to benefits. Dkt. No. 15-2, p. 8 (Pg. ID No. 51). Tansil subsequently initiated this action under 42 U.S.C. § 405(g).

**B. The Administrative Law Judge's Decision**

Social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a–f), 416.920(a–f). If it is determined that the claimant is disabled or not disabled at a step, a determination is made and the process does not move on to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 474 (6th Cir. 2003). At step five, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id*.

ALJ Mason determined that Tansil's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Tansil had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. Dkt. No. 15-2, p. 33 (Pg. ID No. 76). At step two, the ALJ determined that Tansil had the following severe impairments: "bipolar II disorder, depressed type; alcohol and cocaine abuse/dependence, in remission; schizoaffective disorder, combined type; glaucoma; degenerative disc disease in the lower back; asthma; left eye visual impairment; and a shoulder condition with associated pain." *Id*. At step three, the ALJ found that Tansil did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. Dkt. No. 15-2, p. 34 (Pg. ID No. 77).

At the fourth step, the ALJ found that Tansil retained the residual functional capacity (RFC) to perform light work, with the following limitations:

> [S]he requires a sit/stand option such that she can sit up to 6 out of [sic] hours; she can stand up to 6 out of 8 hours; she can walk up to 6 out of 8 hours; however, after 30 minutes of sitting she would have the option to walk around for about 2 minutes but could remain on task for some aspect of her job during this time; stand and walk for up to 2 hours at a time for up to hours at a time; no jobs that require fine

> near visual acuity of the left eye; occasionally climb ramps or stairs; no ladders, ropes, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; no overhead lifting of the upper right extremity; grasping and fingering on the dominant right hand to no more than frequent; pushing and pulling on the right is limited to occasional; she should avoid concentrated exposure to excessive noise, vibration, and irritants such as dust, gas, fumes, and poorly ventilated areas; she should avoid even moderate exposure to operational control of moving machinery and unprotected heights; simple, routine, repetitive tasks in a work environment free from fast paced production requirements involving simple, work related decisions with few if any workplace changes; and brief and superficial contact with coworkers, supervisors, and the general public.

Dkt. No. 15-2, p. 35 (Pg. ID No. 78). The ALJ further determined that Tansil had no past relevant work, but that there were jobs that existed in significant number in the national economy that she could perform, given her limitations. Dkt. No. 15-2, p. 39 (Pg. ID No. 82). The VE testified that Tansil would be able to perform the requirements of occupations such as maid/housekeeper, laundry worker, and ironer, and that there were 3,700 of these jobs in Southeastern Michigan, 8,500 of these jobs in Michigan generally, and approximately 367,000 of these jobs nationally. Dkt. No. 15-2, pp. 39, 101 (Pg. ID No. 82, 144).

Accordingly, the ALJ concluded that Tansil was not disabled at any point from January 1, 2012, though July 26, 2013. Dkt. No. 15-2, p. 40 (Pg. ID No. 83). The Appeals Council came to similar conclusions as the ALJ in finding Tansil was not entitled to benefits, but noted that Tansil's previous work as a cleaner from

2006 to 2011 qualified as past relevant work. Dkt. No. 15-2, pp. 16–17 (Pg. ID No. 59–60).

## III. STANDARD OF REVIEW

### A. Report and Recommendation

When a party files timely objections to a report and recommendation, the Court must "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "This de novo review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part." *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738, 741 (E.D. Mich. 2015) (citing 28 U.S.C. § 636(b)(1)).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981), enabling the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)) (alteration in original).

**B. Review of Social Security Determinations**

Courts are to affirm the ALJ's conclusions unless the ALJ applied incorrect legal standards or the ALJ's findings of fact were unsupported by substantial evidence in the record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Instead, the ALJ's decision is determinative if there is "such relevant evidence as a reasonable mind might accept" as sufficient to support the ALJ's conclusion. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citation omitted).

"The substantial evidence standard is less exacting than the preponderance of evidence standard." *Bass*, 499 F.3d at 509. The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal quotation marks omitted). If substantial evidence supports the

ALJ's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner*, 375 F.3d at 390).

## IV. DISCUSSION

The Court has reviewed the motions, the report and recommendation, and Tansil's objections, and has made a de novo review of the administrative record in light of the submissions.

Tansil made the following objection to the Report and Recommendations in her objection:

> 1. Plaintiff objects to the Magistrates [sic] Report and Recommendation to adopt the decision of the Administrative Law Judge because the Administrative Law Judge and the Magistrate Judge relied on the opinion of Dr. Moten a State Agency Psychologist who conducted a paper review of the Plaintiff's medical records in May 2012. (Tr. 113).
>
> 2. The specific reason for this objection is based on the fact that the Administrative Law Judge and the Magistrate Judge failed to consider the distinction between Dr. Moten, who conducted a paper review, and who by profession is a psychologist, and the opinions of Dr. Cho's, who is a Board Certified Psychiatrist, who had the opportunity to interview Plaintiff, evaluate Plaintiff, and conduct a mental status examination. 20 CFR [§] 416.927 (C) requires that the ALJ must give more weight to the opinion of the specialist than the opinion of a non-specialist[.]
>
> 3. The Magistrate Judge['s] state[ment] that the ALJ discussed and reconciled the consultative findings with the adoption of Dr.

> Moten's conclusions is not accurate (Magistrates [sic] report pg 17, 18) because the ALJ did not discuss and reconcile the consultative findings with the adoption of Dr. Moten's conclusions by finding that the Plaintiff could perform "simple, repetitive work activity". The ALJ and the Magistrate Judge cannot selectively pick and choose the parts of Dr. Boneff's evaluation to suit their purposes when they have categorically stated that the report indicated a "lack of valid effort" by the Plaintiff during intelligence testing which undermined and cast doubt on the accuracy of the testing itself[.] (tr.427)

Dkt. No. 26, pp. 1–2 (Pg. ID No. 559–60). Tansil seeks to have a case remanded for further consideration of her unspecified "psychiatric disability." *Id*. at 2.

Accordingly, as Tansil has confined her objections to the weight given to opinions regarding her mental impairments, the Court will not review the ALJ's findings regarding her physical impairments.

**A. Tansil's First Objection**

First, Tansil appears to argue that it was improper for the ALJ to rely on the opinion of Dr. Rose Moten, a psychologist who conducted a "paper review" of Tansil's medical records on May 15, 2012. Dkt. No. 15-2, p. 38 (Pg. ID No. 81). Dr. Moten's review considered Dr. Cho's evaluation, in addition to Tansil's other medical records submitted by May 2012, and determined that she has the "functional capacity to engage in simple, repetitive work activity." Dkt. No. 15-3, pp. 6–7 (Pg. ID No. 157–58). The ALJ noted that Dr. Moten's review was supported by other evidence in the record of Tansil's ability to live independently

and by the GAF[1] scores provided by Dr. Cho and Dr. Boneff. Dkt. No. 15-2, p. 38 (Pg. ID No. 81).

*Brooks v. Commissioner of Social Security*, 531 F. App'x 636, 642 (6th Cir. 2013), which Tansil cited in support of her argument states that, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." (citing SSR 96–6p, 1996 WL 374180, at *3). One of the examples given in *Brooks* of such an instance was where the consultant's opinion was "based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id*. Such an example is similar to what appears to have occurred here. Dr. Moten reviewed records from Tansil's treating primary care physician, Dr. Samad,[2] who did not have detailed and comprehensive information about Tansil's

[1] The Global Assessment of Functioning (GAF) is a numeric scale that considers psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with scores of 50 or below representing serious impairment in functioning. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.1994).

[2] The ALJ notes that Tansil began complaining of depressive symptoms to Dr. Samad in July 2011. Dkt. No. 15-2, p. 37 (Pg. ID No. 80). Dr. Samad prescribed Tansil psychotropic medications (Zoloft) and referred her for psychiatric care, but

mental impairments because she had not visited a psychiatrist as he had requested. Dkt. No. 15-7, p. 3 (Pg. ID No. 349) (noting that Tansil was "referred to a psychiatrist for clinical depression which she has not pursued"). Dr. Moten also considered the results from Tansil's consultation with a specialist in the field psychiatry, Dr. Cho, which became available a few days before Dr. Moten performed her review of the records. Dkt. No. 15-3, p. 5 (Pg. ID No. 156).

It is true that Dr. Moten did not have the opportunity to consider Dr. Boneff's later submitted consultative findings, which were issued over a year after Dr. Moten's review. Nevertheless, this does not preclude the ALJ's reliance on Dr. Moten's findings. "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when

---

Tansil did not follow his recommendation. *Id*.; Dkt. No. 15-3, p. 5 (Pg. ID No. 156); Dkt. No. 15-7, p. 3 (Pg. ID No. 349) (noting that Tansil was "referred to a psychiatrist for clinical depression which she has not pursued"). The ALJ stated in his decision that "[t]he file shows no specialized mental health care at all." Dkt. No. 15-2, p. 37 (Pg. ID No. 80). The Court's review of the record indicates that Tansil may have seen a psychiatrist, Dr. Patel, from May 2011 until September 2011 in relation to her worker's compensation claim. Dkt. No. 15-7, p. 120 (Pg. ID No. 466). Nevertheless, during the hearing, Tansil discounted any treatment from Dr. Patel, stating that she had only visited him twice and failing to provide any of her treatment records from him to her attorney or the ALJ. Dkt. No. 15-2, pp. 75–76 (Pg. ID No. 118–19). There is no evidence that Tansil fixed this gap in the record by later providing Dr. Patel's records, as discussed. *Id*. at 76–78 (recording that Tansil's attorney stated he would get the records to the ALJ when the ALJ said he needed more medical evidence of her mental disabilities). Since the ALJ could not rely on medical records he never received, it does not appear that his reliance on the medical records from Dr. Samad and consultations from Dr. Cho and Dr. Boneff was in any way errant.

that evidence reflects ongoing treatment, we generally require some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks*, 531 F. App'x at 642 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)) (internal quotation marks omitted) (alternation in original).

Here, not only was there no ongoing treatment for Tansil's psychological symptoms, but the ALJ clearly considered Dr. Boneff's findings in coming to his decision. The ALJ noted that Dr. Boneff felt that the intellectual functioning testing performed on Tansil yielded invalid results due to Tansil's embellishing and putting forth inadequate effort. Dkt. No. 15-2, p. 37 (Pg. ID No. 80); Dkt. No. 15-7, p. 128–31 (Pg. ID No. 474–77) ("[S]he was 'trying' to give incorrect answers"; "Significant problems with others, in light of lack of valid effort in evaluation situation"). In addition to Dr. Boneff's credibility concerns about Tansil, he also found that her GAF score (51) was within the moderate range, allowing for the performance of unskilled work. Dkt. No. 15-2, p. 37 (Pg. ID No. 80). The ALJ's decision clearly notes the findings and diagnoses of Dr. Boneff, and then considers them when concluding that Tansil's exaggerations affected Dr. Boneff's evaluation. *Id.* at 38 ("[L]ittle weight is granted to Dr. Boneff's opinion overall . . . [i]t is incomplete and based on questionable evidence.").

After reviewing the record, the Court finds that the ALJ's reliance on Dr. Moten's opinion that that Tansil demonstrated moderate psychological disabilities was supported by substantial evidence.

**B. Tansil's Second Objection**

In her second objection, Tansil argues that the ALJ was required to give more weight to Dr. Cho's consultation than Dr. Moten's review of medical records because Dr. Cho is a psychiatrist and Dr. Moten is a psychologist. Dkt. No. 26, pp. 1–2 (Pg. ID No. 559–60). As the Commissioner correctly noted in her reply brief, this issue has been waived because Tansil failed to raise it before Magistrate Judge Whalen. Dkt. No. 28, p. 2 (Pg. ID No. 564). In the Sixth Circuit, "issues raised for the first time in objections to an R & R are deemed waived." *Uduko v. Cozzens*, 975 F. Supp. 2d 750, 756 (E.D. Mich. 2013) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

Nevertheless, even if this issue had not been waived, the regulations do not support the argument that 20 C.F.R. § 416.927(c) "*requires* that the ALJ *must* give more weight to the opinion of the specialist." Dkt. No. 26, p. 2 (Pg. ID No. 560) (emphasis added). As the Sixth Circuit previously stated in an unpublished opinion, "it is not a per se error of law, as [the plaintiff] suggests, for the ALJ to credit a nonexamining source over a nontreating source." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).

When weighing opinions, the regulations state that ALJs "*generally* give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(c)(5) (emphasis added). However, whether an opinion came from a specialist is just one of the six factors to be considered under 20 C.F.R. §§ 404.1527(c) and 416.927(c) in determining the appropriate weight to give an opinion. In addition to whether a doctor's opinion relates to medical issues in his or her area of specialty, the following five factors must also be considered:

> (1) the examining relationship;
> (2) the length of treatment and frequency of examination, and the nature and extent of the treatment relationship;
> (3) the amount of evidence presented to support an opinion;
> (4) whether an opinion is consistent with the record as a whole; and
> (5) additional factors presented.

20 C.F.R. §§ 404.1527(c)(1–6), 416.927(c)(1–6).

The ALJ explicitly stated why he gave great weight to Dr. Moten's review: it was supported by the evidence in the file and was consistent with the record as a whole, including the moderate GAF scores provided by Dr. Cho and Dr. Boneff. Additionally, there is no evidence that the ALJ's residual functional capacity determination was inconsistent with Dr. Cho's report, much less that he outright rejected[3] it like the ALJ in *Brooks*. *See Bass v. McMahon*, 499 F.3d 506, 510 (6th

[3] In the only instances where the ALJ did grant little weight to opinions—the non-medical opinion offered by Tansil's mother and the incomplete evaluation by

Cir. 2007) (failing to explicitly state how much weight the ALJ was providing observations is harmless where the ALJ's opinion is consistent with such observations); *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738 (E.D. Mich. 2015) (finding that magistrate judge did not improperly credit conclusions of nontreating reviewing physician, whose opinion was consistent with the examining physicians). Dr. Cho found that Tansil's GAF was 58, on the high end of the "moderate" symptoms. Dkt. No. 15-7, p. 123 (Pg. ID No. 469). Based on Dr. Cho's report, the ALJ determined that Tansil's symptoms were serious, but not preclusive of unskilled work. Dkt. No. 15-2, p. 37 (Pg. ID No. 80).

Accordingly, based on review of the record, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion.

**C. Tansil's Third Objection**

In her third and final objection, Tansil argues that the magistrate judge erred in concluding that the ALJ discussed and reconciled the consultative findings with the adoption of Dr. Moten's conclusion that Tansil could perform "simple, repetitive work activity." Dkt. No. 26, p. 2 (Pg. ID No. 560). Tansil also appears to

---

Dr. Boneff—he stated it outright and provided the reasons for discrediting the opinions, namely that they were inconsistent with and unsupported by the record and Tansil's lack of treatment, or based on questionable evidence. Dkt. No. 15-2, p. 38 (Pg. ID No. 81).

argue in this point that the magistrate judge and ALJ "selectively pick[ed] and [chose] the parts of Dr. Boneff's evaluation to suit their purposes." *Id*.

Unpacking those two separate issues, first, the Court notes that both the ALJ and magistrate did in fact discuss and reconcile the consultative findings with the adoption of Dr. Moten's conclusions. The magistrate judge specifically noted how the ALJ determined that Tansil was capable of "simple, repetitive work activity" because the two GAF scores issued by Dr. Cho and Dr. Boneff both showed moderate, rather than serious, work-related limitations. Dkt. No. 25, pp. 17–18 (Pg. ID No. 555–56). Further, even after noting the limited weight granted to Dr. Boneff's opinion, the ALJ considered for Tansil's need for reduced interpersonal contact in determining that she has the residual functional capacity to perform light work, but should have "brief and superficial contact with coworkers, supervisors, and the general public." *See* Dkt. No. 15-2, pp. 35, 38 (Pg. ID No. 78, 81) ("The evidence of impaired focus/concentration support simple work without production pace, and Dr. Boneff's notes regarding the claimant's social limitations warrant the interpersonal restrictions above.").

Next, the Court finds that neither the ALJ nor the magistrate judge "selectively pick[ed] and [chose] the parts of Dr. Boneff's evaluation to suit their purposes." Dkt. No. 26, p. 2 (Pg. ID No. 560). The ALJ noted Tansil's moderate difficulties in social functioning, as well as new claims she made to Dr. Boneff that

were unverified elsewhere in the record. Dkt. No. 15-2, p. 34 (Pg. ID No. 77). Additionally, the ALJ noted that the GAF score assessed (51) suggested "more serious mental conditions" than Tansil's previous GAF score of 58, but that this score remained within the range of unskilled work. *Id*. at 37. In sum, the ALJ appears to have fairly reported an overview of Dr. Boneff's findings; however, those findings were not preclusive of "simple, repetitive work activity."

Furthermore, the ALJ's credibility determinations did not rely solely on Dr. Boneff's consultative evaluation, but also on consideration of the entire record, including the ALJ's personal observation that Tansil presented with no overt social deficits at the hearing. Dkt. No. 15-2, p. 34 (Pg. ID No. 77); *see also Walters*, 127 F.3d at 531 ("Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Thus, the Court finds that substantial evidence in the record supports the ALJ's conclusion.

## V. CONCLUSION

After a de novo review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion. The Court has considered Tansil's objections to the report and finds them to lack merit.

Accordingly, IT IS HEREBY ORDERED that the magistrate judge's report and recommendation [25] is ADOPTED.

IT IS FURTHER ORDERED that Tansil's objections [26] are OVERRULED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [21] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [24] is GRANTED. The findings of the Commissioner are AFFIRMED.

IT IS SO ORDERED.

s/Gershwin A. Drain
Gershwin A. Drain
United States District Court

Dated: September 12, 2016

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on **September 12, 2016.**

s/Teresa McGovern
Teresa McGovern
Case Manager Generalist